U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 17 2012
CLERK, U.S. DISTRICT COURT
By ________
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

VINCE SMITH, §
§
Plaintiff, §
§
VS. § NO. 4:12-CV-102-A
§
DIASORIN, INC., §
§
Defendant. §

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion for summary judgment filed in the above action by defendant, DiaSorin, Inc. Plaintiff, Vince Smith, filed a response to the motion, and each party filed a brief and appendix. Having now considered the motion, the response, the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this removed action by the filing of his original petition in the District Court of Tarrant County, Texas, 48th Judicial District, asserting a cause of action for wrongful termination under the Sabine Pilot doctrine. Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733 (Tex. 1985). Plaintiff alleges that he refused to approve an expense report that

plaintiff believed was improper or illegal, and that defendant terminated plaintiff's as a result of such refusal. Plaintiff seeks damages including back pay, future pay, and mental anguish, and seeks to recover exemplary damages and pre-judgment interest pursuant to Sabine Pilot, as well as attorney's fees.

II.

The Summary Judgment Motion

Defendant argues for summary judgment on the grounds that all of plaintiff's claims fail as a matter of law under the Sabine Pilot doctrine: (1) Sabine Pilot does not apply to plaintiff because he was not asked to do anything illegal; (2) even if Sabine Pilot applied to plaintiff, he cannot show that the "sole reason" for his termination was his refusal to approve the expense report.

III.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

Plaintiff was hired by defendant in June 2010, as an area sales manager reporting to defendant's president, Carroll Streetman ("Streetman"). Plaintiff supervised the "west" territory for defendant, which consisted of approximately eleven states in the western region of the United States. Streetman gave plaintiff a positive performance review for the March 8,

2010 - January 8, 2011 review period. In February, 2011, Joe Wilson ("Wilson") was hired to be plaintiff's manager, and Wilson reassigned plaintiff to the "central" territory, which included plaintiff's state of residence, Texas. Ray Dean ("Dean"), who resided in Arizona, was assigned to the west territory. The central territory was not meeting revenue and related goals at the time plaintiff took over, and it remained "behind plan" during plaintiff's tenure.

One of plaintiff's duties as an area sales manager was to review expense reports that employees who reported to him submitted. In August 2011, while reviewing an expense report submitted by employee Troy Devlin ("Devlin"), plaintiff noticed a receipt for a purchase of two bottles of liquor at the Atlanta airport, which was not within Devlin's territory. The report noted that the liquor was for "LifeLabs," which plaintiff believed was located in Canada and also was not within Devlin's territory. Plaintiff also believed that it was improper for employees of defendant to provide bottles of liquor to doctors. Plaintiff was concerned about the purchase and receipt, and contacted Tracie Clemmens ("Clemmens") in the human resources office, who also was concerned and suggested reviewing Devlin's other receipts to check for problems. Plaintiff brought the matter to Wilson's attention, and Wilson instructed plaintiff to speak with Devlin to determine whether the matter could have been

an oversight. Wilson also instructed plaintiff not to approve the expense and agreed that human resources should conduct an investigation. An investigation was then conducted, the expense was not approved, and the investigation resulted in Devlin receiving a final written warning. Clemmens and Wilson both agreed that the expense would not be approved, and neither had instructed or asked plaintiff to approve the expense, nor had anyone else asked plaintiff to do so.

In September 2011, plaintiff wished to raise the expense report incident at the "Review of Talent" meeting, because this meeting involved identifying and evaluating employees who could potentially advance within the company, and Devlin's name was on the list of such employees. Plaintiff submitted to Clemmens a review of his subordinates regarding issues to discuss at the meeting. Clemmens believed that the issue was not appropriate for that meeting, and recommended to plaintiff that it be removed from plaintiff's review.

During plaintiff's employment with defendant, several employees complained about plaintiff. At some point, Wilson spoke with plaintiff regarding some of the negative comments employees had made about plaintiff. Clemmens also reported some of the negative comments about plaintiff that were made by employees during their exit interviews with defendant, conducted by Clemmens.

IV.

Analysis

A. Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

B. Plaintiff's Wrongful Termination Claim

It is well-established that an employee-at-will, such as plaintiff, may be terminated "for good cause, bad cause, or no cause at all." Cnty. of Dallas v. Wiland, 216 S.W.3d 344, 347 (Tex. 2007). The Sabine Pilot doctrine is "a very narrow exception to the employment-at-will doctrine," and "covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." Sabine Pilot, 687 S.W.2d at 735. The plaintiff has the "burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act." Id. Sabine Pilot specifically protects employees "who are asked to commit a crime, not those who are asked to report one." Ed Rachal Found. v. D'Unger, 207 S.W.3d 330, 332 (Tex. 2006) (emphasis in original). "The Sabine Pilot doctrine applies only if the plaintiff was forced to choose between committing a criminal act and being discharged." Ran Ken, Inc. v. Schlapper, 963 S.W.2d 102, 105 (Tex. App.--Austin 1998, pet. denied). "[T]he Sabine Pilot cause of action protects law-abiding employees from retaliation from their law-breaking employers and

superiors." Riddle v. Dyncorp Int'l, Inc., 666 F.3d 940, 943 (5th Cir. 2012).

There is no evidence anywhere in the record that could raise an issue of fact that plaintiff was ever asked to do anything illegal. Defendant specifically points out that plaintiff admitted in his deposition that no one in defendant's employ instructed or asked him to approve the expense, and there is no indication that Wilson or Clemmens ever believed that the expense should be approved. Def.'s Br. at 6, 9-10; Def.'s App. at 23-24, 29-30; Smith Dep. 23:13-24:1; 113:2-15. The record reflects that plaintiff noticed the problem in Devlin's expense report and reported the problem to Clemmens and Wilson. Clemmens began an investigation, Wilson agreed that such an investigation should occur, and both Clemmens and Wilson agreed that the expense should not be approved. The expense was never approved, Devlin was formally reprimanded with a final written warning, and Devlin resigned his employment with defendant around September 13, 2011.

Plaintiff does not appear to contest that he was never asked to do something illegal, which is at the core of Sabine Pilot. Yet, plaintiff still argues that his firing was based on his refusal to approve the expense by describing his talents and experience and by attacking defendant's stated reasons for terminating his employment. Plaintiff spends a great deal of time providing information about the performance evaluations he

received prior to Wilson's arrival, but the court sees little relevance between such information and plaintiff's Sabine Pilot contention. The fact that plaintiff's previous supervisor gave him high scores on an evaluation may indicate that such supervisor thought plaintiff's performance was satisfactory, but does not reflect Wilson's appraisal of plaintiff's work.

Plaintiff also contends that there was no documentation in his personnel file of poor leadership skills, that Wilson "did not express significant concern" about the employees' negative comments about plaintiff, that Wilson "showed very little interest" in investigating Devlin's expense, and that defendant, most likely through Wilson, created a spreadsheet documenting plaintiff's travel schedule which plaintiff claims was prepared "to bolster allegations that Plaintiff was not meeting with his direct reports." Pl.'s Br. at 11. Plaintiff refers to Wilson's deposition, in which Wilson testified that he made the decision to terminate plaintiff in late September 2011, and that the reason was "a cumulation of all the factors I've already mentioned," which included plaintiff's leadership skills, employees' complaints about plaintiff, Wilson's personal observations of plaintiff's interactions with others and presentations at company meetings. Pl.'s Br. at 15; Def.'s Br. at 3-4.

In attempting to demonstrate that his refusal to approve the

expense was the sole reason for his firing, plaintiff relies heavily on the temporal proximity between his notification to superiors about the expense report and his termination, approximately two to three months.[1] The Fifth Circuit has held, in the context of retaliation, that temporal proximity must be "very close" to be considered persuasive evidence. Strong v. Univ. Healthcare Sys., LLC, 482 F.3d 802, 808 (5th Cir. 2007). Further, the Fifth Circuit "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would tie the hands of employers." Id. Here, plaintiff must show more than "but for" causation; he must show that the "sole reason" he was fired was because of his refusal to commit an illegal act. As noted above, plaintiff has not identified any evidence that he was asked to do anything illegal, or that he was forced to choose between committing a crime and keeping his job. The mere fact that his employment was terminated within two or three months of reporting the expense report cannot create a material fact issue.

The fact remains that plaintiff was an at-will employee, and defendant had the right to terminate plaintiff's employment for a number of reasons, or for no reason at all. The court need not

---

[1] The record reflects that plaintiff reported the expense issue in early August 2011, that Wilson had made a decision to terminate plaintiff at the end of September 2011, and that plaintiff was officially terminated on October 31, 2011. It is unclear which dates and events plaintiff is relying on to establish sufficient temporal proximity to support his claim.

determine exactly why plaintiff's employment was terminated, only whether plaintiff has identified evidence that could allow a rational factfinder to conclude that plaintiff's employment was terminated solely because he refused to approve Devlin's expense, and that approving such an expense was illegal. Plaintiff provides little more than suppositions, arguments, and beliefs to attempt to fit within the extremely narrow Sabine Pilot doctrine. Again, no one asked him to approve the report, all relevant individuals agreed that the expense should not be submitted, the individual who submitted the report received a final written warning and resigned shortly thereafter.

V.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all such claims and causes of action brought by plaintiff, Vince Smith, against defendant, DiaSorin, Inc., be, and are hereby, dismissed with prejudice.

SIGNED December 17, 2012.

JOHN McBRYDE
United States District Judge